IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| BTC RESOLUTION, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:06cv144 |
| | ) |
| FORD MOTOR CREDIT CO., | ) |
| | ) |
| Defendant. | ) |

## <u>M E M O R A N D U M   O P I N I O N</u>

This matter comes before the Court on Defendant's motion to dismiss pursuant to Rules 12(b)(6) and 12(b)(7) of the Federal Rules of Civil Procedure.  For the following reasons, the Court will grant Defendant's motion to dismiss.

### I.  Background

This action arises from conflicting claims over a $16,033,400 fund currently held in escrow.  In 1999, Defendant, Ford Motor Credit Company ("Ford") made several loans to Bering Truck Corporation and Bering Truck Distribution, LLC (collectively, "Bering").  Each loan was secured by Bering's assets, and Bering entered into written agreements that granted Ford first priority security interests in such assets.  In February 2001, Bering failed to meet its payment obligations to Ford, allegedly as a result of collusive business practices between Hyundai Motor Company and DaimlerChrysler AG.  At the time, the outstanding amount due under the loans totaled $25,454,164.17.

After the default, Bering and Ford entered into a forbearance agreement and began to discuss methods for pursuing Bering's inchoate legal claims against Hyundai and DaimlerChrysler.  In April 2001, Bering and Ford entered into an agreement ("assignment agreement") under which Bering assigned its claims to BTC Resolution, LLC ("BTC"), the Plaintiff in this case.  BTC agreed to prosecute the claims and distribute the proceeds in a specified manner.[1]  In June 2001, Bering ceased doing business and voluntarily surrendered its assets to Ford.  According to the allegations of Plaintiff's complaint, the assets that were surrendered to Ford as collateral had a value in excess of $40 million.  Plaintiff alleges that Ford failed to dispose of these assets in a commercially reasonable fashion.

BTC pursued contract claims against Hyundai and obtained an arbitration award in its favor of approximately $7,000,000, most of which satisfied BTC's legal and related expenses.  BTC also settled antitrust and tort claims against Hyundai and DaimlerChrysler for an undisclosed amount.  After BTC deducted its legal fees and expenses, as well as a portion of the sum to which all parties agreed BTC was entitled, it placed $16,033,400 in escrow pursuant to a Qualified Settlement Fund

---

[1] The assignment agreement provided that any proceeds resulting from the claims would be disbursed first to satisfy the legal expenses incurred by BTC in prosecuting the claims, second to reimburse Ford for any expenses it incurred in liquidating Bering's assets, and third to pay an amount equal to any unsatisfied obligations due Ford under the original loans.  Any remaining proceeds would then be disbursed to BTC.

Escrow Agreement ("QSF Agreement").  Ford claimed that it was entitled to the amount in escrow to reimburse its liquidation expenses and to meet unsatisfied obligations under the loans to Bering.

On February 8, 2006, BTC filed this civil action seeking a declaratory judgment that it is entitled to the entirety of the funds held in escrow.  Ford's motion to dismiss was nominally filed under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  As Ford's motion is premised on BTC's purported failure to state a claim and failure to join indispensable parties, however, the Court will consider it to be filed under Rules 12(b)(6) and 12(b)(7).  Ford's motion is currently before the Court.

## II.  Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint, *see Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994), and should be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *De Sole v. United States*, 947 F.2d 1169, 1177 (4th Cir. 1991) (citations omitted); *see also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In passing on a motion to dismiss, "the material allegations of the complaint are taken as admitted." *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted).

Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Id.* In addition, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8.

Under Rule 12(b)(7), an action may be dismissed for failure to join an indispensable party. The issue of whether a party is indispensable requires a two-step inquiry. *See* Fed. R. Civ. P. 19; *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir. 1999). The first question that must be determined is whether a party is "necessary" pursuant to Rule 19(a). *Owens-Illinois*, 186 F.3d at 440. Second, if joinder of a "necessary" party is not feasible, the Court must determine whether the party is indispensable to the action or whether the action may continue in the party's absence. *Id.* In reaching this second determination, the Court must consider several factors, including whether a judgment rendered in the party's absence would be prejudicial, the extent to which prejudice can be lessened or avoided by shaping relief, whether a judgment rendered in the party's absence would be adequate, and whether the plaintiff will have an adequate remedy if the action is dismissed. Fed. R. Civ. P. 19(b).

## III.  Analysis

Ford's motion to dismiss for failure to state a claim is premised on the argument that BTC's lawsuit is, at heart, an allegation that Ford improperly disposed of Bering's collateral. According to Ford, BTC's action is therefore essentially a claim for reduction or elimination of the deficiency claimed by Ford against Bering.  Such a claim could only be asserted by Bering.[2] *See* Va. Code § 8.9A-626.

The Court disagrees with Ford's characterization of BTC's complaint.  While BTC does allege that Ford failed to dispose of Bering's assets in a commercially reasonable manner, the actual claim that BTC asserts is for a declaratory judgment establishing BTC's right to the escrow funds.  The issue of whether Ford properly disposed of the collateral is merely a factual issue subsumed within the overall claim.  The assignment agreement between Ford and BTC expressly provided that BTC would be entitled to the Hyundai/Daimler claim proceeds after Bering's obligations to Ford were satisfied, and so BTC is entitled to litigate the amount of those obligations.  Were the Court to rule

---

[2] At the oral argument on this motion, BTC asserted that the assignment agreement resulted in the assignment to BTC of any claims for reduction or elimination of the deficiency owed by Bering to Ford.  Contrary to BTC's characterization, the assignment agreement actually provides only for the assignment of the Hyundai/Daimler claims.  There is no language in the agreement indicating that claims related to Bering's deficiencies were assigned to BTC.  In fact, the agreement expressly states that BTC did not assume Bering's debts, obligations, or liabilities. (Compl. Ex. 2, at 3.) This implies that the right to seek reduction or elimination of any deficiencies remained with Bering as well.

otherwise, BTC would be left without a mechanism to establish its rights under the assignment agreement in the event that Bering failed to seek a reduction or elimination of the deficiency under Va. Code § 8.9A-626.

The question that remains is whether the Bering companies are indispensable parties to the instant action. Ford contends that because this action primarily concerns the amount of the deficiency owed by Bering, the action must be dismissed to avoid both prejudice to Bering and the possibility of conflicting legal obligations for Ford and BTC. Before deciding whether Bering is indispensable, the Court must first determine whether Bering is a necessary party. Rule 19(a) provides that a party is necessary if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a).

The Fourth Circuit has interpreted subsection (1) above to mean that "[c]omplete relief refers to relief as between the persons already parties, not as between a party and the absent person whose joinder is sought." *United States v. County of Arlington*, 669 F.2d 925, 929 (4th Cir. 1982). *See also LLC Corp.*

*v. Pension Guaranty Benefit Corp.*, 703 F.2d 301, 305 (8th Cir. 1983) (Under Rule 19(a)(1), "[t]he focus is on relief between the parties and not on the speculative possibility of further litigation between a party and an absent person."). In this case, the funds held in escrow are the subject matter of the dispute. Under the QSF Agreement, only BTC and Ford have rights to these funds. Bering has relinquished any right to the proceeds of its claims against Hyundai and DaimlerChrysler. Accordingly, complete relief can be afforded between BTC and Ford in this case.

Nevertheless, Rule 19(a)(2) requires a finding that Bering is a necessary party. According to the Fourth Circuit, "the increased potential for inconsistent judgments is grounds for finding a nonjoined party necessary." *Owens-Illinois*, 186 F.3d at 441. Further, the "potential for factual, as opposed to legal, 'whipsaw' argues strongly in favor of having one court adjudicate the entire matter with all the parties before it . . . ." *Schlumberger Indus. v. National Sur. Corp.*, 36 F.3d 1274, 1287 (4th Cir. 1994).

As stated above, the primary factual issue underlying BTC's claim to the escrow funds concerns Ford's disposition of the assets Bering surrendered as collateral. If the Court were to conclude that BTC was entitled to all or part of the escrow funds, a corollary finding that Ford improperly disposed of the

collateral would be necessary.  In light of this, the Court is mindful of the fact that Bering retains the ability to seek a reduction or elimination of the deficiency under Va. Code § 8.9A-626.[3]  The circumstances of this case are therefore clear that Bering can claim an interest relating to the subject of this action and that Bering is so situated that disposition of this matter in Bering's absence may leave Ford exposed to inconsistent obligations.

The next question before the Court is whether joinder of the absent Bering companies is feasible.  Both Bering companies are Delaware corporations, as is Ford.  Their joinder would therefore eliminate this Court's diversity-of-citizenship jurisdiction.  At oral argument on the instant motion, BTC suggested a mechanism by which the Bering companies could be joined to this action.  BTC suggests that Ford assert a counterclaim for a deficiency judgment and join the Bering companies to this action pursuant to Rule 13(h) of the Federal Rules of Civil Procedure.  Then, according to BTC, the Bering companies could assert their claims for reduction or elimination

---

[3] BTC has indicated that Bering is both unwilling and unable to pursue any claims against Ford.  For example, BTC has submitted a declaration from William R. Anderson, president of the Bering companies, stating that "[a]ll persons associated with the Bering Entities consider them to be defunct entities."  (Pl.'s Opp. Ex. 1, at 3.)  The Bering companies continue to exist as legal entities, however, and the assignment agreement implies that they have retained the ability to enforce their rights under Va. Code § 8.9A-626 against Ford.  *See supra* note 2.  It is therefore clear that the Bering companies continue to have the ability to expose Ford to further litigation on the amount of the deficiency.

of the deficiency owed to Ford.  BTC argues that this Court could then exercise supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367.  The Court disagrees.

Essentially, BTC is seeking to join the Bering companies as plaintiffs against Ford in an action to reduce or eliminate their deficiencies, pursuant to Va. Code § 8.9A-626. Congress has expressly denied supplemental jurisdiction over persons proposed to be joined as plaintiffs in certain diversity-of-citizenship cases.  *See* 28 U.S.C. § 1367(b).  Section 1367 thus precludes the exercise of supplemental jurisdiction in this case, and *United Capitol Insurance Co. v. Kapiloff*, 155 F.3d 488 (4th Cir. 1998), upon which BTC relies, does not dictate a different result.  In *United Capitol*, the Fourth Circuit held that a district court could exercise supplemental jurisdiction over nondiverse insurance brokers who were named as counterclaim defendants by the defendant.  *See* 155 F.3d at 493.  By contrast, in this case, it the plaintiff who seeks to have the defendant join the nondiverse parties, only so that those parties can then assert claims against the defendant.  Section 1367(b) will not permit this.

As joinder of the Bering companies is not feasible, the Court must consider the factors set forth in Rule 19(b) to determine whether the Bering companies are "indispensable" parties.  As an initial matter, the Court has already discussed

the possibility that judgment rendered in Bering's absence would result in prejudice to Ford.  The second question under Rule 19(b) is whether the Court can take measures to lessen or avoid the possibility of prejudice to Ford, and the parties have suggested no such measures.

The third inquiry is whether judgment rendered in Bering's absence would be adequate.  Undoubtedly it would, as no parties besides BTC and Ford can claim entitlement to the funds in escrow.  The Court would be able to fully resolve the parties' rights to these proceeds.  Fourth, the Court must consider whether BTC would have an adequate remedy if the action is dismissed.  In this regard, the Court notes that Ford has commenced an action in the Circuit Court for Warren County, Virginia.  The Warren County action seeks to resolve the parties' rights to the escrow funds and includes the Bering companies among the parties.

In light of the possibility of Ford's exposure to inconsistent legal obligations and the availability of this alternate forum, the Court finds that the interests of justice favor dismissing the instant action and requiring BTC to pursue its claims in state court.  Accordingly, the Court will find the Bering companies to be indispensable parties and will dismiss this action pursuant to Rule 12(b)(7).

## IV.  Conclusion

For the foregoing reasons, the Court will grant Defendant's motion to dismiss.  An appropriate Order will issue.


April 12, 2006                    _____/s/_____
Alexandria, Virginia                     James C. Cacheris
                              UNITED STATES DISTRICT COURT JUDGE